The opinion of the court was delivered by
Watkins, J.
This is an action in damages for the breach of a •charter party, and plaintiff demands of the defendant the sum of two thousand one hundred and eighty-two dollars, as the compensation due therefor.
From a judgment of the court in favor of the defendant, rejecting plaintiff’s demand, it has appealed.
The case of the plaintiff, as stated in its petition, is that in the month of July, 1894, it entered into a contract with defendant, whereby it agreed to lease or charter to the latter, who agreed to accept and pay for same, a certain steamship named Sunniva, for the period of one month, at the rate of four hundred and fifty pounds ¡sterling, which are of the equivalent value of two thousand one hundred and eighty-two dollars and fifty cents in American currency.
That said contract was made by correspondence between the par *1314 ties in the form of telegraphic dispatches — the plaintiff having carried on its correspondence through W. W. Hurlburt & Co., a firm of ship brokers of New York, who acted in the capacity of agents for the defendants, for whom the said firm had power and authority to contract.
That it attaches to its petition all the original telegrams which were received during the course of said correspondence, and copies of all those sent to and received by W. W. Hurlburt & Co. — the originals of the latter being in defendant’s possession — as the evidence of the aforesaid contract.
That said vessel, Sunniva, was to be ready for the use of the defendants, according to the terms of the aforesaid agreement, “ about the 30th of July, 1894, and that on the 29th of July, 1894, the said vessel being then in the port of Mobile, Ala., and ready for delivery,” it was tendered to the defendants, and by them refused. That by said refusal and declination of said vessel defendants violated their contract and bound themselves for the aforesaid contract price, of its lease, which it is entitled to recover.
The prayer of the petitioner is for judgment conformably to the foregoing allegations against the firm of John Wilson & Co. and the. individual members thereof in solido.
Defendants excepted that proper parties defendant had not been made — insisting that, if any contract had been made such as the plaintiff describes, it was made and entered into “ by plaintiff with the Bluefields Banana Company,” and that if any action they have,, it is against the latter, and not against the exceptors.
This exception was, by consent, referred to the merits.
Por answer the defendants aver that their business was that of ship brokers and agents and fruit importers, and in said capacities, the agents of the Bluefields Banana Company, a corporation organized and doing business at Galveston, Texas, and at Bluefields,. Nicaragua and which has for its objects, among others, the operating and chartering of vessels from various points to Bluefields.
That while admitting the genuineness of the various telegrams plaintiff has declared upon, they aver that the contract represented therein for the charter of any vessel was for the Bluefields Banana. Company, and that the plaintiff was well acquainted with the fact of' this agency, and with the fact that John Wilson, whose name appears in said telegram, is the first vice president of the said com- *1315 pany, and that the transaction was for the use and benefit thereof.
“That whatever correspondence or transactions occurred with petitioners were made with John Wilson in his capacity of agent and first vice president of said company, and that any right of action, if any petitioners-have, should be against the said Bluefields Banana Company, and not your defendants.”
But in the alternative that the court should hold that they did enter into said contract, they aver that desiring to run a steamship from Bluefields, Nicaragua, to Mobile, Ala., for account of the Blue-fields Banana Company in connection with another steamship, they opened negotiations with W. W. Hurlburt & Co., a firm of ship brokers in New York City, for the purpose of chartering a vessel. That thé main object of these negotiations was to obtain a vessel immediately, and this fact was brought to the attention of plaintiffs, as well as of Hurlburt & Co., at the opening of said negotiations:
They aver that the steamship Sunniva was offered by said W. W. Hurlburt & Co., and accepted by the defendants on the above condition.
“That subsequently it was distinctly understood and agreed between plaintiff and defendants herein, that the said steamship Sunniva would be at Mobile on the 24th or 25th of July, as otherwise your defendants would not take her, and that this condition in the contract was fully understood and agreed to.
“ That when the time agreed on had arrived, your defendants, were at Mobile, ready and willing to perform their contract, and. charter or lease said vessel; but that plaintiff neglected to perform their share of the contract and have the vessel delivered on time. That John Wilson, one of your defendants herein, waited patiently at Mobile until the 29th; and, the boat not arriving, notified plaintiff that the vessel could no longer be leased or chartered, as (they) had failed to perform their obligation, and defendants could no-longer use the said vessel.”
They specially “ deny that plaintiffs have suffered any damages by-reason of the dissolution of said contract, or that they ai e liahle for the payment of the charter of said vessel;” and they aver that plaintiff acquiesced in their refusal to take the ship, by immediately-employing her for their own account during the time she was to-have been leased, deriving a profit therefrom, and thereby releasing them.
*1316 The foregoing extracts from the pleadings leave only three questions open for our decision: (1) whether the defendants are personally bound on the contract, or charter party; (2) whether the vessel was to be ready for the use of the defendants ‘ ‘ about the 30th of July, 1894,” as claimed by the plaintiff, or on the 24th or 25th of said month, as claimed by the defendants; (3) whether the plaintiffs acquiesced in defendants’ declination to accept the vessel, and released them from their engagement by making use of the vessel during the period of the contract.
Defendamos answer having admitted the veracity of the telegrams, and averred that subsequently it was distinctly understood and agreed between plaintiff and defendants herein, that the S. S. Sunniva would be at Mobile on the 24th or 25th of July,” the contract stands •conceded to be as alleged by the plaintiff, unless it can be shown •differently by the defendants by fair preponderance of evidence.
We have appended the telegraphic correspondence, and for convenience have extracted same from plaintiff’s brief, pages five and six, viz.:
“As the telegrams together make up a written contract, and as they completely set at rest the question of the time of delivery stipulated, we quote them in full:
“ 1. Document P. A.
'“ ‘ To Orr & Laubenheimer, Mobile, Ala.:
“ ‘ Have vale. Others open as per letter. Please advise anything required. What is lowest you will accept for balance España, ■Jaederen, Sunniva.
“ ‘(Signed) W. W. Hurlburt & Oo.’
“2. Document Marked P. A., Being the Reply to P. A.
■“ ‘ ju. W. Hurlburt & Co.:
“ ‘ Jaederen 390, Sunniva 550.
“ ‘ (Signed) Orr & Laubenheimer.’
“ 3. Document P. B.
“ ‘New York, July 18, 1894.
“ ‘ To Orr & Laubenheimer, Mobile, Ala.:
“ ‘ Are offered three seventy (370) for Sunniva. Make us counter offer. As quick delivery as possible. Balance charter how long.
“ ‘ (Signed) W. W. Hurlburt & Co.’
*1317 .“ 4. Document P. B,, Being the Reply to Telegram P. B.
“ To W. W. Hurlburt & Co., New York:
“ ‘Sunniva four hundred and fifty, nothing less. One or two trips..
“ ‘ (Signed) . Orr & Laubenheimer.’
“The next telegram in the series shows that Hurlburt & Co. now-accept the price, but endeavor to obtain from Orr & Laubenheimeran agreement for an immediate delivery, namely:
“5 — Document P. C.
“‘New York, July 19, 1894.
“ ‘To Orr & Laubenheimer:
“ ‘Have closed Sunniva four hundred and fifty less address “ ‘commission. When does charter expire? Confirm immediate-. “ ‘delivery.
“ ‘ (Signed) W. W. Hurlburt & Co.’
“6 — To This Document P. C., Ts a Reply.

‘“To W. W. Hurlburt & Co.:

“ ‘Can not deliver until about 30th. Charter expires August 22.. “ ‘Answer.
“ ‘ (Signed) Orr & Laubenheimer Co.’
“7 — Document P. D.
' “ ‘New York, July 19, 1894.
“ ‘To Orr & Laubenheimer:
‘“Closed Sunniva, Wilson two trips four hundred and fifty less. “ ‘usual address to Wilson. Please notify him when she is due.
“ * (Signed) W. W. Hurlburt & Co.’
“ On July 29, 1894, one day before the time of delivery, Orr &, Laubenheimer sent to John Wilson & Co. the following telegram: ‘ Sunniva unloading; what disposition shall we make of her? Answer quick.’
“ To this Wilson & Co. replied on July 30, 1894*, as follows:
“ ‘ To Orr & Lambenheimer, Mobile, Ala. :
“ ‘ Sunniva not arriving when wanted, we can not use her.
“ ‘ (Signed) Wilson & Co.’ ”
This is the complete correspondence, and it shows that a lease of-the Sunniva was closed on the 19th of July, at four hundred and¡ fifty pounds sterling, leaving open the question of plaintiff’s con *1318 formation of immediate delivery; but, on the same date, plaintiff wired the agents, Hurlburt & Co.: “ Can not deliver until about the 30th. * * Answer.”
Immediately the said agents replied as follows, viz.: “Closed •Sunniva. Wilson two trips four hundred and fifty less; usual address to Wilson. Please notify him when she is due.”
The plain meaning of this telegram is that the agents had accepted .and closed the lease of the Sunniva for two trips at four hundred and fifty pounds sterling — less than the original offer of five hundred and fifty pounds — and that the plaintiff was to notify defendants at their usual address “ when she was due.”
In conformity therewith plaintiff wired defendants on the 29th of July that the Sunniva was unloading at Mobile, and wanted to know what disposition they should make of her — requesting a prompt answer.
On the following day the defendants replied as follows, viz.:
“ Sunniva not arriving when wanted, we can not use her.”
Considering that the plaintiff had plainly stipulated that they could not deliver “ until about the thirtieth,” and that defendants’ .agents had closed the transaction on that statement, the declination of defendants was a distinct violation of their contract, which rendered them liable for the price agreed upon.
This being the case, the question arises whether defendants have .substantiated their averments that subsequently to this contract it “was distinctly understood and agreed between (them) and the plaintiff that the Sunniva would be in Mobile on the 24th or 25th of .July.”
But before considering that question it is well to state that, in our opinion, defendants’ letter to the plaintiff of date August 6, 1894, with respect to the question of their default, puts at rest the question •of their having made the contract upon their own personal account; in fact it is inferentially admitted.
The letter says:
' “Messrs. Hurlburt & Oo. write us that you will hold them responsible •because we did not take the Sunniva. When your Mr. Laubenheimer was in our office here he distinctly stated that the Sunniva would be in on the 24th or 25th sure. As you know we were desirous of getting a steamer to run in connection with the Wilson on schedule time, ihat it would have suited us to have taken her, but up to the time of the *1319 writers leaving Mobile on the 29th there was no sign of the Sunniva’s .arrival; hence the writer decided not to take the ship.”
Referring to the telegraphic correspondence, it will be discovered, that the question of “quick delivery” was discussed and finally settled between the parties on July 19. Hurlburt & Oo. say in their telegram: “ Have closed Sunniva * * * Confirm immediate delivery.” To this the plaintiff immediately replied: “Gan not deliver •until about the thirtieth.”
In fact, she did arrive at Mobile on the 29th of July, and was then being unloaded when the plaintiff wired the defendants; and it was on that very date that John Wilson, of the defendants’ firm, left .Mobile and returned to New Orleans.
But the defendants, in that letter, do not say that the original contract had been changed, so as to make the date of delivery the ,24th or 25th; but they affirm that when Mr. Laubenheimer was in their office “ he distinctly stated that the Sunniva would be in on the 24th or 25th.” That was in no sense the equivalent of an alter.ation of the original contract, for if it had been so considered by the defendants, then Mr. John Wilson need not have awaited her -arrival until the 20th, as he claims to have done. His course of conduct tends to establish the contrary view.
Not only so, but on the 31st of July, 1894, immediately after John Wilson’s return to New Orleans from Mobile, John Wilson & Oo. write a letter to the Bluefields Banana Company at Galveston, as iollows, viz.:
“ My miss onto Mobile, so far as the Sunniva is concerned, failed.
“ Up to my leaving there on the 29th, the Sunniva had not arrived. I therefore declined to take her, as it would put the Wilson .and Sunniva close together; and as I could only get the Sunniva up to the 30th (of August), Orr and Laubenheimer having an option on her, and would not say whether I could get her or not after September 1, I considered it best to look for another vessel, and have about concluded the charter of the Hiram,” etc.
This letter fully explains the situation, and more clearly evidences an intentional abandonment of their contract with the plaintiff, because the defendants could not secure the lease of the Sunniva for .September — their engagement being for the-month of August only.
And these admissions of the defendants are in perfect harmony with the testimony of the plaintiff’s witnesses.
*1320 We are of opinion that plaintiffs have clearly made out their case and are entitled to recover of the defendants the full amount of their contract. For it is clearly proven, as well as admitted by the defendants, that the vessel was not deliverable under the original agreement until about the 30th of July, 1894; and the proof shows, that she was being unloaded at the port of Mobile on the 29th of July, 1894, and was on that date tendered to the defendants and by them declined. And it is not established by the evidence that any subsequent change was made in the contract.
It is admitted by plaintiff that after the vessel had been tendered to the defendants and declined, that it put the vessel into service on their own account and operated her a part of the time, using an effort, as it had the right to do, to reduce defendants’ damages to a minimum, but that said ventures resulted in a further loss. We do-not regard that action as in any sense an acquiescence in defendants’ violation of their contract. The judgment appealed from must, be reversed.
It is therefore ordered, adjudged and decreed that the judgment, appealed from be annulled and reversed; and it is now ordered and decreed that the plaintiff do have and recover of and from the defendants, John Wilson & Oo., and from the individual members thereof in solido, the sum of two thousand one hundred and eighty dollars and fifty cents, with legal interest from the 31st of July, 1894, and all costs of both courts.